UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

DAVID NICHOLAS DEMPSEY,

Defendant.

No. 1:21-cr-566-RCL

*Let this be filed.*
*Royce C. Lamberth*
*U.S.D.J. 1/4/24*

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, David Nicholas Dempsey, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

2. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of

Statement of Offense—Page 1

the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

3. As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

4. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

5. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

6.  During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

### *David Nicholas Dempsey's Participation in the January 6, 2021, Capitol Riot*

7.  The defendant, David Nicholas Dempsey, travelled from his home in California to Detroit, Michigan by airplane on January 4, 2021. Dempsey joined with two individuals in Detroit and travelled to Washington, D.C., via automobile on January 5, 2021.

8.  On the morning of January 6, 2021, the defendant watched speeches at the rally near the ellipse. The defendant was interviewed on video while standing in front of a wooden structure representing a hanging gallows, which was fitted with a noose and a sign stating, "This is Art." Dempsey was wearing green camouflaged cargo pants, a dark gray long sleeve shirt, a black helmet, vest, sunglasses, and an American flag gaiter covering his neck, mouth, and nose.



9. In the video recorded interview, the defendant was asked, what he thought of "this work of art." The defendant responded, in part:

> This isn't just art. This is necessary. Like I said, they say "we need to start arresting people, we need to start putting 'em behind bars." No, we don't need to waste the taxpayer dollars on these worthless credents who are treasonous to our country. We need to decriminalize hemp and marijuana, turn all that shit into rope when we're done with it, and then string all these fuckin' worthless bastards up from the top of those [pointing to the gallows], these treelines, the rafters, the rooftops, the statues, I don't care where they go. String 'em up and string 'em up high. And let everybody know this is what happens when you are a treasonous piece of shit who doesn't belong in this fuckin' country and has this fuckin' country's worst objective at heart. So, I'm 100% with it. I say we should have been doing this a long fuckin' time ago. Them worthless fuckin' shitholes like fuckin' Jerry Nadler, fuckin' Pelosi, uh Clapper, Comey, fuckin' all those pieces of garbage, you know, Obama, all these dudes, Clinton, fuck all these pieces of shit. That's what they need. They don't need a jail cell. They need to hang from these motherfuckers while everybody videotapes it and fuckin' spreads it on YouTube, Bitchute, or whatever fuckin' other social media there is. And they need it to get the point across, the time for peace talk is over. All that shit about being complacent, fuck all that shit. For four years, five years really, they've been fuckin' demonizing us, belittling us, hurting us, killing us, fuckin' doing everything they can to stop what this is and people are sick of that shit. You know, and uh, hopefully one day soon, we really have someone hanging from one of these motherfuckers just like they do in them other countries.

10. Dempsey walked with others to the U.S. Capitol building.

11. By approximately 2:41 p.m., a large crowd of rioters had gathered in front of an arched entrance to the Lower West Terrace doors, which, in the context of the January 6, 2021, attack, has colloquially become known as the "tunnel" on the U.S. Capitol due to the partially constructed inaugural stage.

12. Dempsey joined the crowd pushing into the line officers defending the tunnel. At approximately 3:56 p.m., Dempsey climbed atop the shoulders, arms, and backs of other riots to get to the front line.



13.     Upon reaching the front, Dempsey threw a short pole-like object into the tunnel striking MPD Officer M.D. and shouted, "Fuck you bitch ass cops."



14. Dempsey then grabbed a police riot shield and yelled at the officers, "You fuckin' pieces of shit."



15. At approximately 3:57 p.m., Dempsey attempted to throw a flagpole at officers in the tunnel, but his throw was inadvertently blocked by a police riot shield held by another rioter.

16. At approximately 3:58 p.m., Dempsey grabbed an officer's baton and unsuccessfully tried to pull it away from the officer.



Statement of Offense—Page 6

17. Between approximately 3:59 p.m. and 4:00 p.m., using the tunnel's wooden frame as support, Dempsey kicked the shields of law enforcement officers four times.



18. At approximately 4:01 p.m., Dempsey took a long pole from the crowd. At approximately 4:02 p.m., Dempsey swung the long pole with his left hand at the officers in tunnel, striking their shields.



Statement of Offense—Page 7

19. At approximately 4:03 p.m., Dempsey, using his foot, pushed away the arm of another member of the crowd who was trying to take the pole away from him.



20. At approximately 4:07 p.m., Dempsey sprayed two separate bursts of pepper spray into the line of officers.





21.     At approximately 4:07 p.m., a green plastic soda bottle, which was thrown by another member of the crowd, landed near Dempsey. Dempsey picked up the bottle, removed the

lid, and threw it at the officers in the tunnel. Liquid from the bottle hit the officers in the tunnel and splashed onto a CCTV camera, which obscured the camera's view of the events in the tunnel.





22. At approximately 4:11 p.m., Dempsey sprayed pepper spray into the tunnel, striking MPD Detective P.N. in the face and upper-body.

Statement of Offense—Page 10



23. The pepper spray used by Dempsey was capable of inflicting serious bodily injury, and did, in fact, cause bodily injury to Detective P.N., that is, Detective P.N. suffered significant injury, including a choking feeling, burning of the eyes, throat, face, and skin, which burning sensation lasted for days and weeks afterward. Upon being sprayed by Dempsey, Detective P.N. feared losing consciousness and being pulled out into the crowd.

24. At approximately 4:11 p.m., Dempsey threw the canister of pepper spray at the officers in the tunnel.

25. Between approximately 4:12 p.m. and 4:13 p.m., Dempsey swung a metal crutch at the line of officers in the tunnel at least nine times, striking MPD Sergeant J.M. in the head at least once. Dempsey also struck Sergeant J.M. on the arm with the crutch.

26. The crutch used by Dempsey was capable of inflicting serious bodily injury, and did, in fact, cause bodily injury to Sergeant J.M., that is, as a result of being hit by the crutch, Sergeant J.M. suffered a significant injury to his head.



27. Starting at approximately 4:24 p.m., Dempsey swung a collapsible aluminum pole with his left hand multiple times at officers. Some swings hit officers' batons, hands, arms, and helmets.



28.     Between approximately 4:24 p.m. and 4:32 p.m., Dempsey removed the American flag gaiter he had been wearing and replaced it with a black and grey checkered gaiter.

29.     At approximately 4:32 p.m., Dempsey threw a folded-up metal pole at officers, but missed. He then waived the crowd forward towards the tunnel and threw two more objects.






30. At approximately 4:33 p.m., Dempsey swung a long wooden pole two times at officers in the tunnel. The second swing hit an officer. Dempsey then threw a pole at the officers.





31.     At approximately 4:35 p.m., Dempsey yelled at the officers in the tunnel, "Pedophile supporting oath brakers, fuck you, fucking traitors … come out here."

32.     At approximately 4:42 p.m., Dempsey retreated from the front of the crowd and rinsed pepper spray from his eyes and face. During this time, Dempsey put on a blue camouflaged t-shirt over his vest, changed his gaiter, removed his helmet, and put on a black beanie hat.



33.     At approximately 5:02 p.m., Dempsey returned to the front line and swung a flagpole at the line of officers in the tunnel, striking an officer's riot shield.



34. At approximately 5:03 p.m., Dempsey threw two objects at officers in the tunnel.



### *Elements of the Offense*

35. The parties agree that 18 U.S.C. § 111(a)(1) and (b), as charged in Count One of the Superseding Information, requires the following elements:

    a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Detective P.N., an officer from the Metropolitan Police Department.

    b. Second, the defendant did such acts forcibly.

    c. Third, the defendant did such acts voluntarily and intentionally.

    d. Fourth, Detective P.N. was assisting officers of the United States who were then engaged in the performance of their official duties.

    e. Fifth, the defendant made physical contact with Detective P.N.

    f. Sixth, in doing such acts, the defendant intentionally used a deadly or dangerous weapon, that is, pepper spray.

36. The parties agree that 18 U.S.C. § 111(a)(1) and (b), as charged in Count Two of the Superseding Information, requires the following elements:

    a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Sergeant J.M., an officer from the Metropolitan Police Department.

    b. Second, the defendant did such acts forcibly.

    c. Third, the defendant did such acts voluntarily and intentionally.

    d. Fourth, Sergeant J.M. was assisting officers of the United States who were then engaged in the performance of their official duties.

    e. Fifth, the defendant made physical contact with Sergeant J.M.

    f. Sixth, in doing such acts, the defendant intentionally used a deadly or dangerous weapon, that is, a metal crutch.

## *Defendant's Acknowledgements*

37.  The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he assaulted and caused bodily injury to Sergeant J.M. by hitting him with an aluminum crutch, and that he assaulted and caused bodily injury to Detective P.N., by spraying him with pepper spray.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   */s/ Douglas B. Brasher*
DOUGLAS B. BRASHER
Texas State Bar No. 24077601
Assistant United States Attorney (Detailed)
1100 Commerce Street, Third Floor
Dallas, TX 75242
(214) 659-8604
douglas.brasher@usdoj.gov

*/s/ Carolina Nevin*
CAROLINA NEVIN
Assistant United States Attorney
NY Bar No. 5226121
601 D Street, NW
Washington, DC 20530
(202) 803-1612
carolina.nevin@usdoj.gov

**DEFENDANT'S ACKNOWLEDGMENT**

I, David Nicholas Dempsey have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 09-19-23

DAVID NICHOLAS DEMPSEY
Defendant

**ATTORNEY'S ACKNOWLEDGMENT**

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 09/19/23

AMY C. COLLINS
Attorney for Defendant